**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No.: 14-23 (JLL) |
| Plaintiff, | |
| v. | **OPINION** |
| LAMONT VAUGHN, JAREZ BARON, | |
| Defendants. | |

**LINARES**, District Judge.

Presently before this Court are various motions *in limine* filed by the Government and Defendant Vaughn as well as other miscellaneous requests made by Defendant Vaughn. On January 19, 2016, this Court issued an Order resolving many of the parties' issues. On January 20, 2016, the Court held oral arguments addressing the remaining open items. At that hearing, Defendant Vaughn also raised some additional items. The Court resolved many of the issues on the record at the hearing, and reserved on some. This Opinion resolves the issues on which the Court reserved and addresses the additional issues raised by Defendant Vaughn to the extent that they were not addressed at the hearing. An appropriate Order accompanies this Opinion.

**I.      Recorded Calls Between Defendant Vaughn and Felicia Holt**

At the January 20 hearing, this Court addressed the admissibility of two recorded calls between Defendant Vaughn and Ms. Holt (one on November 23, 2012, and the other on November 25, 2012), both of which were objected to by Defendant Vaughn. *See* Hr'g Tr. (Jan. 20, 2016) ("Jan. 20 Tr.") at 98:13-99:2, 101:13-23, 110:2-111:9. The Court held that these two calls were "admissible both as intrinsic evidence and potentially as also predisposition

evidence." *Id.* at 140:6-19; *see also id.* at 135:3-18.  In addition to arguments regarding the general admissibility of these two calls, the Government also argued that it should be permitted to refer to certain calls (including these two) as "'Recorded Jail Calls' both in its case-in-chief and during cross-examination of the defendant." *See* ECF No. 218 ("Gov't Opp'n") at 6; Jan. 20 Tr. at 114:18-24, 122:9-135:2.  The Court reserved on whether these calls can be referred to as "jailhouse calls." *See id.* at 140:20-141:4.

As background to this issue, in its November 2, 2015 Order (issued several months after Defendant Vaughn was permitted to proceed with the entrapment defense at trial, *see* ECF No. 139 at ¶ 1 (July 22, 2015 Order)), this Court ordered that "the recorded jail-house calls should be referred to as 'lawfully recorded phone calls'" not "jailhouse calls." ECF No. 181 ("Nov. 2 Order") at 2.  The Government did not seek reconsideration of said ruling at that time.  Presently, in its motions *in limine*, the Government moves for a ruling that it be permitted to use the November 14, 2012 arrest of Defendant Vaughn in its case-in-chief and, separately, that it should be permitted to refer to the calls captured while he was incarcerated pursuant to this arrest as being recorded while Defendant Vaughn was in jail. *See* Gov't Opp'n at 6; *see also* Jan. 20 Tr. at 140:20-23 ("I have previously ruled that it had to be . . . lawfully recorded conversations. The Government now wants to go beyond that ruling.").

On January 19, 2016, the Court denied the Government's motion to use evidence of Defendant Vaughn's November 14, 2012 arrest in its case-in-chief. *See* ECF No. 228 ("Jan. 19 Order") ¶ 5(b).  Thus, the only issue left to be decided is whether the calls intercepted during Defendant Vaughn's incarceration related to this particular arrest can be referred to as being recorded while Defendant Vaughn was in jail.

2

At the January 20 hearing, the Court inquired regarding the probative value of referring to the calls as "jailhouse calls." In response, the Government suggested that it could "sanitize" its presentation. *See* Jan. 20 Tr. at 125:3, 128:13-17. The Government suggested that "[w]e would say that it was a recorded call that Mr. Vaughn knew was being recorded, and it was being recorded by law enforcement." *See id.* at 128:13-17. The Government made clear that the probative value of this framing was that Defendant Vaughn <u>knew</u> that the calls were being recorded. *See id.* at 126:18-21, 127:22-128:9, 129:8-130:4, 144:11-24. When pressed by the Court as to how the Government would establish that Defendant Vaughn knew that the calls were being recorded, the Government responded that it could do so by stipulation in order to avoid someone from the jail having to testify as to jail procedures and/or introducing the preamble to the jail calls (which currently have been removed from the recordings). *See id.* at 129:8-131:7. As an alternative, the Government suggested that it would be

> willing to stipulate something to the effect of the jury is not to speculate as to why he was arrested, that the charges have nothing to do with the underlying case in this matter, and that the charges were ultimately dismissed. That's fine. If you want to let the jurors know that it was not related to narcotics trafficking, and it had nothing to do with this case, and let them know that the charges were ultimately dismissed.

*Id.* at 142:24-143:9. Defendant Vaughn stated that he would not agree to such a stipulation. *See id.* at 143:11-24. He also argued that the prejudicial effect of referring to the fact that he was incarcerated at the time of the calls was higher than the probative value. *See, e.g., id.* at 142:8-19. The Court expressed that it tended to agree with Defendant Vaughn, but nevertheless wanted to listen to the recordings and think about this issue. *See id.* at 142:2-7 ("I agree with you. It has prejudicial value that is higher . . . so I want to see what the probative value is, but I have to think about it.").

The Court has already ruled that the substance of the calls may be used by the Government where the substance is otherwise admissible (as with the two calls between Defendant Vaughn and Ms. Holt referenced above). The relevant probative value question then is limited to the incremental probative value of being able to argue that Defendant Vaughn "knew" that the calls were being recorded by law enforcement. Without a stipulation to that effect, permitting the Government to attempt to establish this knowledge will likely require exploring the fact that Defendant Vaughn was incarcerated at the time, related to an arrest not related to this case, that the Court has already ruled may not be introduced by the Government in its case-in-chief, and one where the charges were ultimately dismissed. Reviewed in this context, the Court finds that the prejudice of such introduction outweighs the incremental probative value as articulated by the Government. As previously held, these calls should be referred to as "lawfully recorded phone calls"; and at trial the Government will not be permitted to reference that the calls were made while Defendant Vaughn was incarcerated. Additionally, the Government may not probe as to whether Defendant Vaughn knew that the calls were being recorded, inasmuch as such inquiry would undoubtedly lead to the fact that Defendant Vaughn was at the time incarcerated.[1]

## II.   Recorded Calls Between the Confidential Witness ("CW") and Felicia Holt

The Government also seeks to use various calls between the CW and Ms. Holt, *see* Jan. 20 Tr. at 160:14-23; Defendant Vaughn opposes use of such recordings, *see* ECF No. 212

---

[1] To the extent the Government at trial will seek to establish that Defendant Vaughn was attempting to maintain or expand his alleged drug business while "unavailable," *see* Jan. 20 Tr. at 124:7-21, separate and apart from his knowledge of the recordings, the Government may submit for the Court's and Defendant Vaughn's consideration a proposed jury instruction to be given prior to introduction of the recordings at issue indicating that at the time of the recording Defendant Vaughn was not available. The proposed instruction, however, may not refer to Defendant Vaughn's incarceration or purported knowledge of the recording.

4

("Vaughn Opp'n") at 14.  At the January 20 hearing, the Court held that calls between the CW and Ms. Holt where Ms. Holt indicated that the CW was to keep the information discussed from Defendant Vaughn could not be used by the Government in its case-in-chief.  *See* Jan. 20 Tr. at 163:8-170:24.    The Court generally agreed to permit the Government to use other CW-Holt recordings that were in furtherance of the conspiracy with Defendant Vaughn.  *See id.* at 170:10-14.

Subsequent to the hearing, the Government indicated via letter to the Court that it no longer intended to use several of the CW-Holt recordings, but it did intend to use others.  *See* ECF No. 234 at 1-2; *see also* ECF No. 244 (Letter to Court from Gov't (Jan. 26, 2016) at 2). Defendant Vaughn's position continues to be that "none of the statements of Ms. Holt and the CW should be permitted to be used by the Government at his trial."  ECF No. 237 (Letter to Court from Def. Vaughn (filed Jan. 25, 2016) at 11.  Because specific portions of the CW-Holt recordings that the Government intends to use have yet to be identified by the Government, and because there continues to be a dispute over the admissibility of these recordings, the Court cannot decide this issue in a vacuum, and therefore will require extra notice prior to use of such recordings to give adequate time for objection by Defendant Vaughn given the Court's prior ruling that certain of the CW-Holt recordings may or may not be admissible.

In the Court's January 19 Order, the Court permitted the parties to use evidence in their opening statements provided that "they deliver a copy of any evidence and charts that they intend to use in their opening statements to opposing counsel by the close of business the day prior to the openings."  Jan. 19 Order ¶ 21.  Therefore, if the Government intends to use any CW-Holt recordings in its opening statement, it must notify Defendant Vaughn five (5) days prior to opening statements.  Additionally, if the Government intends to use any CW-Holt recording with

5

a witness, it must give the Court and Defendant Vaughn notice, outside the presence of the jury, prior to use.  If the Government wants a pre-trial ruling on admissibility of these recordings to avoid these during-trial notice requirements, it must submit to the Court and Defendant Vaughn the specific portions of the CW-Holt recordings that it intends to use in its case-in chief by no later than twenty (20) days prior to trial.

## III.  Sequestration of FBI Agents

The Government has "request[ed] that its case agents, FBI Special Agents Kimberly Wojcik and Andrew G. Weintraub, be exempted from the Rule on Witnesses as designated representatives of the United States pursuant to Rule 615(2)."  ECF No. 204 ("Gov't MIL") at 35.  In analyzing Rule 615(2) and surveying case law from other circuits, the Third Circuit has held that "the government case agent responsible for a particular investigation should be permitted to remain in the courtroom, even though the agent will often testify later on behalf of the government."  *United States v. Gonzalez*, 918 F.2d 1129, 1138 (3d Cir. 1990).  The Third Circuit did not at that time "decide the issues of whether a case agent may ever be excluded from trial or what level of prejudice is necessary to carry such a motion for sequestration since it is not before us today." *Id.* at 1138 n.8.

The Government cites to *United States v. Phibbs*, 999 F.2d 1053 (6th Cir. 1993), for the proposition that the "prosecution [may be] justified in having two 'assisting' agents in a lengthy trial with complex evidence."  Gov't MIL at 35.  However, the Sixth Circuit in *Phibbs* expressly found that "Rule 615(2) affords the government the right to designate only one representative . . . ."  999 F.2d at 1072.  The *Phibbs* Court further held that where the Government seeks to exempt more than one agent, it must do so by establishing that the second agent is "essential" under Rule 615(3), which the Court stated was "no easy task."  *See id.* at 1072-73.   And, in fact, such a

6

finding is typically made where, unlike here,[2] different agents were responsible for different parts of the case. *See, e.g, id.*, 999 F.2d at 1073 & n.5 ("Finken was the case agent in Kentucky, while Merryman was stationed in Tennessee."); *United States v. Kosko*, 870 F.2d 162, 164 (4th Cir. 1989) ("[T]he testimony of the two agents did not overlap as to any matter on which they had personal knowledge, and therefore their mutual presence during trial could not have undermined the integrity of the fact-finding process.").

The Sixth Circuit's position is consistent with other Circuits who have directly addressed this issue of exclusions under Rule 615(2) versus other subsections, the plain language of 615(2) ("an officer or employee"), and with the Third Circuit's *Gonzalez* holding that "the government case agent," singular, may be exempt under Rule 615(2). *See, e.g., United States v. Neely*, 76 F.3d 376 (Table), 1996 WL 60329 at *12 (4th Cir. 1996) ("[T]hat the Government may designate only one such agent is equally clear."); *United States v. Hickman*, 151 F.3d 446, 453-54 (5th Cir. 1998) ("[W]e have approved the use of two case agents at trial, where a second agent's non-exclusion could be justified under the essential-presence exception of Rule 615(3)"). *But see United States v. Jackson*, 60 F.3d 128, 134 (2d Cir. 1995) (acknowledging the position of other Circuits but stating that "[w]hile we would expect it to be the rare case when a district judge exempts more than one witness under a particular subprovision of Rule 615, we hold that a district court judge has discretion to do so").

Additionally, in exempting the two agents in *Phibbs* under the different subsections of Rule 615, the *Phibbs* Court made clear that courts are not without power to ensure that the two agents "would not parrot each other's testimony." *Phibbs*, 999 F.2d at 1073. In *Phibbs*, the

---

[2] Here, the Government has stated that Agent Wojcik will testify about the whole case from "soup to nuts," with Agent Weintraub's testimony more limited and related only to certain areas of the case. *See* Jan. 20 Tr. at 191:1-17.

Sixth Circuit found that the district court had addressed such a concern by "direct[ing] that, when one of [the agents] was on the stand, the other was to be outside the courtroom," and indicated that "[s]uch a measure could be taken, not only on the basis of the court's inherent powers of trial oversight, but also in reliance upon Rule 615 itself." *Id.*; *see also United States v. Farnham*, 791 F.2d 331, 334-35 (4th Cir. 1986) (overturning a conviction on one count because the defendant's "conviction on Count Three turned exclusively on the relative credibility of the defendant on the one hand and Agents Phillips and Martin on the other. Sequestration of Martin during Phillips' examination would have minimized the opportunity for collusion or tailoring of testimony, permitting Farnham to test each agent's credibility, independent of the other's testimony.") (internal citations omitted).

Contrary to the Government's vehement objection that Defendant Vaughn would request that the case agents not be permitted to be present during each other's testimony or that of the CW, concern over "parroting" is not uncommon (as noted above) or frivolous (particularly on the specific facts of this case given Defendant Vaughn's defense). In fact, aside from other powers the Court may have to address such concerns, the Third Circuit has noted that, pursuant to Rule 611, "other courts of appeals have held that case agents, ineligible for sequestration under Rule 615, might nonetheless be forced to testify first at trial, to avoid giving the prosecution unfair advantage." *United States v. Drummond*, 69 F. App'x 580, 582 (3d. Cir. 2003); *see also United States v. Machor*, 879 F.2d 945, 953-54 (1st Cir. 1989) ("[U]nder Fed. R. Evid. 611(c) the court has ample discretion to control the order of interrogating witnesses. However, this discretion should be used sparingly and good reason should exist before the court intervenes in what is essentially a matter of trial strategy.") (cited in *Drummond*). Although the Court in *Drummond* found that such measures were not warranted based on the specific facts of

8

that case because there was only a "negligible possibility of prejudice" that did not outweigh the Government's interest in ordering its witnesses as it chose, the Third Circuit acknowledged that there may be instances were such measures are appropriate in accordance with the "trial's truth-seeking function." *Drummond*, 69 F. App'x at 583 (noting that "this might be a more difficult issue if Marzec's testimony were not clearly subsidiary to Mailey's, or if there were non-Government witnesses involved for whom pre-trial coordination of testimony would be more difficult").

Here, the Government sought a sequestration exemption for both agents only under Rule 615(2). Additionally, the Government indicated that it planned to call Agent Wojcik first, and it objected to calling Agent Weintraub first or having another person or agent assist until Agent Weintraub testified. *See* Jan. 20 Tr. at 185:20-21, 187:13-23, 190:15-21. The Government also has indicated that it prefers not to rely on Agent Wojcik's assistance prior to Agent Weintraub's testimony for reasons of convenience as she is not currently on assignment in Newark. *See id.* 187:24-188:3. In other words, the Government has taken the position that it does not want to call Agent Weintraub first, it wants to have Agent Weintraub present at trial during other testimony even before he testifies, and that Agent Wojick is not a substitute representative (even though the Government originally moved to have her exempted). Defendant Vaughn has strongly objected to these positions, particularly with respect to Agent Weintraub being present while other agents or the CW testifies given, among other reasons, his plain involvement in the case with Lt. Demeter from the time the FBI's full investigation of Defendant Vaughn was opened, which was prior to the alleged entrapment. *See* ECF No. 237 (Vaughn Jan. 25 Letter) at 1-4; Lt. Demeter Case Opening Memo (May 11, 2012) at 1, 4, 5.

At the January 20 hearing the Court encouraged the Government to think about other solutions that may address Defendant Vaughn's concerns. *See* Jan. 20 Tr. at 260:11-13 (COURT: "Give it some thought. I'm not forcing you to make any decisions now. Give it some thought because that would maybe help me fashion a remedy easier."). To date, the Government has not offered any additional solutions that would moot the issue. The trial has now been delayed, potentially affording the Government other options that it had not considered prior to the hearing when the trial date was five days away.

Based on the specific facts of this case and an initial review of the law, the Court is tentatively disinclined to permit the agents (or at least Agent Weintraub) to be present in the courtroom during the testimony of other agents or the CW prior to their own testimony. However, because the Court recognizes that the Government has a strong interest in how it plans and presents its case and the options were left open at the hearing (some of which could moot the issue), prior to rendering a final decision on this issue, the Court will permit the Government to re-evaluate its position to determine whether it wishes to proceed based on the position expressed in its papers and at the hearing, or if it has a new proposal to address the specific concerns raised by Defendant Vaughn (such as, for example, calling Agent Weintraub first or second with another agent assisting during Agent Wojcik's examination). To this end, the Government shall inform the Court (via ECF) and Defendant Vaughn by February 12, 2016 of its position with respect to sequestration of these agents. If the issue for both agents is not mooted by the Government's suggestion, the Court will then issue a ruling based on a more detailed analysis that also addresses the prejudice arguments raised by Defendant Vaughn.

IV.     **Defendant Vaughn's Use of "Motive" Evidence and Arguments**

The Government has moved *in limine* to preclude Defendant Vaughn "from attempting to admit evidence concerning, or otherwise referring to, the government's motivation for engaging in the investigation and prosecution of [him]." Gov't MIL at 26.  While Defendant Vaughn has conceded that arguments related to his vindictive prosecution claim are for the Court, not jury, he nonetheless argues that he should be permitted to introduce "motive" evidence in light of his entrapment defense. *See* Vaughn Opp'n at 33-36; Jan. 20 Tr. at 220:3-245:25.  The general rule is "that the entrapment defense focus(es) on the intent or predisposition of the defendant to commit the crime, rather than upon the conduct of the Government's agents." *Hampton v. United States*, 425 U.S. 484, 488 (1976) (plurality opinion) (internal quotations and citations omitted, alteration in original); *see also United States v. Fedroff*, 181 (3d Cir. 1989) ("The defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct.").  As with all evidence, the party seeking to admit it must establish a foundation for the admission, including establishing the relevance of the evidence and that its probative value outweighs any prejudice. Defendant Vaughn has cited no law contrary to these positions. *See* Vaughn Opp'n at 33-36; Jan. 20 Tr. at 220:3-245:25.  Rather, he essentially makes a general credibility or completeness argument—that his entrapment defense will not make sense without the context of the alleged motive to entrap him. *See*, Vaughn Opp'n at 33; Jan. 20 Tr. at 220:21-221:5, 226:19-227:16.

The Government argues that, even assuming motive evidence may be appropriately admitted in some limited cases, such introduction would first require establishing with "some specificity" a foundation and grounds that have not been established here. *See, e.g.*, Jan. 20 Tr. at 222:8-224:20; 225:23-226:15, 235:16-23, 237:3-6, 242:24-243:3.   The Government further

argues that permitting Defendant Vaughn to argue motive without first connecting these dots will result in highly prejudicial information being interjected inappropriately into the case.  *See id.* at 223:16-17, 230:2-15.

The Court first acknowledges that the elements of the entrapment defense focus on the conduct of the defendant seeking to assert such a defense.  Even if there are instances where the "motive" of the Government may be relevant to an entrapment defense based on the specific facts of the case (and Defendant Vaughn has not cited to such a case), the Court is presented with a conundrum that has affected other issues he has raised.  On the one hand, Defendant Vaughn wants a pre-trial ruling applying an exception in his favor, and, on the other hand, he does not want to make a detailed proffer to the Court, or any proffer not *ex parte* to be challenged by the Government.  *See, e.g.*, *id.* at 244:11-14 ("I think it's wrong for the Government to have information that I intend to present or cross-examine witnesses on and with respect to during the trial, pretrial."), *id.* at 245:1-16 (same).  Thus, Defendant Vaughn objects to being required to attempt to connect the dots pre-trial, with notice to the Government.

Additionally, although Defendant Vaughn argues that "motive precedes the inducement," *id.* at 226:17, the Court is cognizant that, in fact, motive to entrap—if relevant at all—is only relevant if Defendant Vaughn has established sufficient facts for entrapment to go the jury.  In other words, that "motive" may temporally precede inducement *if* a basis for the entrapment defense is shown to exist, it is not relevant at all if there is insufficient evidence of entrapment in the first place.  Permission to proceed with the entrapment defense is not a ruling that such defense will go to the jury; Defendant Vaughn must establish an appropriate basis for the defense during trial.

For these reasons, the Court will grant the Government's motion to the extent that Defendant Vaughn may not argue "motive" in his opening, question witnesses regarding a "motive" to entrap him, or put on witnesses in his case-in-chief arguing "motive." This ruling is without prejudice to Defendant Vaughn to argue that he should be permitted to argue "motive" in closing (after the close of evidence and only if and when he has established, at trial, facts to support his argument).

To the extent that the Government's motive motion seeks to exclude not only arguments of "motive" but also the introduction of certain underlying facts, the Court denies that request. While Defendant Vaughn may not argue "motive," the underlying facts that form the basis of his motive argument may be admissible on other grounds.   As but one possible example, the Government acknowledged that "[t]he defendant may, of course, inquire as to bias of any witness to tell the truth while testifying under oath." Gov't MIL at 28.  Thus, consistent with the Court's prior ruling regarding opening statements and cross examination of witnesses, all parties must have a good faith basis for the arguments they make, the questions they ask, and the evidence they seek to introduce, but the Court will not preclude specific lines of inquiry pre-trial that may have an appropriate evidential basis other than "motive".  To be clear, if Defendant Vaughn makes an argument in opening, seeks to introduce a piece of evidence, or asks a question which the Government finds objectionable, and Defendant Vaughn's response is that it goes to "motive," the argument, questioning, and/or evidence will not be permitted.  If, on the other hand, Defendant Vaughn provides an alternative acceptable basis for admission unrelated to "motive," the Court will consider whether such argument or evidence is otherwise admissible and appropriate.

The Court finally notes that the issue is not whether Defendant Vaughn will have an opportunity to argue motive, but rather whether that argument may be made to the jury, or only to the Court in the context of Defendant Vaughn's vindictive prosecution claim. The Court has already held that it is reserving on that claim. As the Court noted above, certain of Defendant Vaughn's arguments require a balancing by the Court with regard to the *timing* of consideration of the issue. Where the Court believes that it will benefit from hearing additional evidence but does not want to require Defendant Vaughn to proffer information pre-trial (with an opportunity for the Government to respond), it has reserved on the decision to see how the evidence comes in at trial and to permit the timing of the arguments (if an appropriate basis has been established) to occur after Defendant Vaughn has been able to present his case. *See, e.g.*, Jan. 20 Tr. at 27:25-28:4 (COURT: "I reserved on the issue of vindictive prosecution. I think that that is a Court issue not a jury issue, and I think the more information that the Court has up to now and throughout the course of the trial will inform the Court in the making of that decision.").

## V.      Stay of Trial and Other Text Message Related Arguments

At the January 20 hearing Defendant Vaughn expressed frustration with respect to the text message issue, including requesting a stay of trial so that he can immediately appeal the Court's decision to the Third Circuit. *See id.* at 14:4-16:24. He also argued that certain new text message issues that he has raised have not been mooted by the Government's submissions and should be addressed by the Court. *See id.* at 17:2-15. In a subsequent letter to the Court, Defendant Vaughn withdrew his request for a stay to appeal. *See* ECF No. 237 (Vaughn Jan. 25 Letter to the Court) at 11.

There appears to be confusion as to the Court's prior Opinion and Orders, which is resulting in continuing text message issues being raised. Subsequent to this Court's November

14

10, 2015 Opinion, Defendant Vaughn submitted numerous filings and made arguments pointing to "new" evidence which he argues will "not [simply] enlighten" the Court, but rather will "***prove*** to the Court" that "Trooper Lieutenant Demeter actually destroyed text messages in this matter." *See, e.g.*, Hr'g Tr. (Jan. 5, 2016) at 22:16-23 (emphasis added); *see also* ECF Nos. 203, 207, 213, 214, 220.   Defendant Vaughn asserts that because the new submissions "prove" that Lt. Demeter deleted the text messages, he has shown bad faith and, as such, his case should be dismissed. *See, e.g.*, ECF No. 213 (Letter from Defendant Vaughn filed January 5, 2016) at 2. Defendant Vaughn misunderstands this Court's holdings, the law, and the Court's refusal to consider the issue further at this time.

The Court has found that "contrary to . . . policy, Lt. Demeter (for whatever reason, nefarious or not) systematically deleted or knowingly permitted text messages with the CW to be deleted."   Nov. 10 Opinion at 31.   The Government has represented—and the Court acknowledged—that "just for the period from April 2013 until August 2013, there appear to have been approximately 170 messages exchanged between the CW and Lt. Demeter." *Id.* at 13 n. 7 (citing Letter from Gov't to Court (Sept. 22, 2015) (ECF No. 169) at 2).   None of these 170 referenced messages were produced. *See id.* at 7 (only 3 (now 4) Casio messages were produced, all from October 2013).   It is clear—as the Court has noted and the Verizon logs show—that the vast majority of messages between the CW and Lt. Demeter prior to 2015 and his use of the Samsung Galaxy were deleted and/or otherwise not preserved.  Because the Court already reached this conclusion in its November 2015 Opinion, subsequent submissions pointing out additional discrepancies in the logs and the Government's production does not alter this Court's position; it has already agreed with Defendant Vaughn that the messages were

inappropriately deleted. But, contrary to Defendant Vaughn's position, such a finding is not dispositive of the issue.

The Third Circuit has made clear that it is not the destruction of evidence that results in a due process violation, it is the ***bad faith*** destruction of evidence that results in such a violation. *See United States v. Deaner*, 1 F.3d 192, 200 (3d Cir. 193). The Third Circuit has also made clear that failure to follow policy in the destruction of evidence does not "in and of itself impl[y] bad faith." *Id*. It has also stated that "[t]he presence or absence of bad faith by the police for purposes of the Due Process Clause ***must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed***." *United States v. Christian*, 302 F. App'x 85, 87 (3d Cir. 2008) (emphasis added) (quoting *Griffin v. Spratt*, 969 F.2d 16, 20 (3d Cir. 1992)).

With respect to the content of the deleted messages, the Court found that Lt. Demeter's "repeated mantra that he knows there was no evidential value in the missing messages lacks credibility." Nov. 10 Opinion at 31. The Court further found that "[i]t is also unpersuasive for Lt. Demeter to self-servingly testify with absolute certainty that there was nothing of evidential value in the deleted messages when he simultaneously provided inaccurate testimony on very basic matters including, but not limited to, the identity of the phone he received after the phone was lost." *Id.* Thus, the Court also has already held that it did not find Lt. Demeter's testimony credible. But, that is not the same thing as finding sufficient support for an affirmative ruling that Lt. Demeter deleted the messages with "malicious intent" to hide potentially exculpatory evidence, as opposed to deleting the for other reasons. *See Christian*, 302 F. App'x at 87 (citing *United States v. Ramos*, 27 F.3d 65, 67 (3d Cir. 1994)). For these reasons, the Court held that, at the time of the Opinion, the Court found that Defendant Vaughn had not established bad faith.

16

The Court did not find that Lt. Demeter's actions were insignificant, or that Defendant Vaughn was simply making a "mountain out of a mole hill." But, it did find that Defendant Vaughn had not met his burden to establish that Lt. Demeter acted in bad faith as defined by the case law.

At that point, the Court had three options: (1) it could require more evidence pre-trial—an option opposed by both parties (the Government not waiting to make the CW available for questioning, and Defendant Vaughn not wanting to show too much of his case pre-trial); (2) it could have issued a final ruling based on the evidence presented with no option that it be revisited by Defendant Vaughn; or (3) it could reserve on a final decision to see how the evidence came in at trial, permitting Defendant Vaughn the opportunity to develop the record without having to preview more of his case pre-trial. The Court chose the last option, finding no bad faith at that time, issuing a pre-trial sanction against the Government barring it from using any text messages in its case-in-chief, reserving on whether a spoliation instruction was also appropriate, and denying Defendant Vaughn's motion for reconsideration without prejudice to reargue bad faith at the close of evidence. Despite these rulings (which were designed primarily to address Defendant Vaughn's competing concerns) and the Court's subsequent Order that it would accept no further submissions and hear no further argument on the text message issue *at this time*, Defendant Vaughn has continued to submit letters related to this issue, and he spent a considerable amount of time at the Jan. 20 hearing rehashing this issue. The Court reiterates that, pre-trial, it will make *no* further rulings on the text message issue, it will consider *no* further submissions on this matter, and it will hear *no* further arguments on the issue.

DATED: February 4, 2016

JOSE L. LINARES
U.S. DISTRICT JUDGE