NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br>v.<br><br>LAMONT VAUGHN,<br><br>            Defendant. | Criminal Action No.: 14-23 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

Currently before this Court is a motion *in limine* filed by the Government to exempt F.B.I. Agent Andrew G. Weintraub from sequestration pursuant to Rule 615(b).[1] Defendant opposes this request arguing that "[a]gents of the Government—who were undoubtedly party to the entrapment here, should not be permitted to sit in the Courtroom while other agents and officers . . . are testifying concerning *this particular issue*." ECF No. 212-1, at 4 (emphasis added).

BACKGROUND

In August 2012 the New Jersey State Police and then federal authorities began using a cooperating witness ("CW") to investigate Defendant Vaughn. Among other things, the CW "conducted approximately thirty (30) controlled [drug] purchases" during the period August 2012 to August 2013. *See* ECF No. 99 (Gov't Opp'n to Defs.' Pretrial Mots.), at 10. This period of August 2012 to August 2013, when the CW was signed up as a cooperating witness with the

---

[1] Originally, the Government moved to exempt Agent Weintraub as well as Agent Kimberly Wojcik (*see* ECF No. 204, at 35), but they subsequently amended the request to apply only to Agent Weintraub (*see* ECF No. 256, at 2).

FBI, is the time period on which the Government focuses. Defendant Vaughn, on the other hand, focuses on the period of the investigation prior to the CW being signed up with the FBI, and alleges that during that period he was entrapped by agents of the Government. *See* ECF 212-1 ("Vaughn MIL Opp'n"), at 4.

In response to a question from the Court at a prior hearing, the Government described the investigation of Defendant Vaughn as follows:

> Your Honor, this investigation was out of the joint terrorist and task force ["JTTF"] at the FBI. On that task force, *prior to this case beginning*, that trooper [Lt. Demeter] was a member of that task force. He left the task force and went back to the state police. But in his capacity as a state police officer, he was involved in investigations occurring in and around Newark. He was aware of investigations that the joint terrorist and task force was working on, as he was working in Newark. When he got this informant, he brought this informant to the joint terrorist and task force. So there was only about a week to ten days with which . . . he became an informant for the FBI. So it is a very small window that he [the CW] was not signed up with the FBI, but had been under the state police.

May 11, 2015 Hr'g Tr. at 75:5-21 (emphasis added). Lt. Demeter previously testified that he is presently with the State Police Street Gang North Unit. Sept. 1, 2015 Hr'g Tr. at 9:24-25. He testified that prior to his current position, he was assigned to the "FBI Joint Terrorism Task Force or the JTTF in Newark" for three years, from approximately 2009 to May 2012. *Id.* at 9:15-22. With respect to his role in the investigation of Defendant Vaughn, Lt. Demeter testified as follows:

> Q: Are you familiar with what the time period of the investigation is?
> A: From August 2012 through August 2013.
> Q: And did you participate in the investigation of Lamont Vaughn and Jarez Barron and others?
> A: Yes.
> Q: What in general was your role in the investigation?
> A: At the outset, I had an informant that I brought over to the FBI and had him co-sign the informant, and then throughout the initial and through much of the investigation, I helped out with coordinating drug buys, surveillances, handling the informant and anything associated with the case.

*Id.* at 11:10-22. With respect to Agent Weintraub's role in the case and in response to a question from the Court about whether he was involved from the beginning, the Government stated that Agent Weintraub was "[n]ot [involved] from the very beginning. . . . He was involved in the case, but it depends on how you define 'the very beginning' . . . ." Jan. 20, 2016 Hr'g Tr. at 186:15-23.

A JTTF FBI memorandum dated May 11, 2012, indicates that, while at the FBI, Lt. Demeter opened the FBI "full investigation" on Defendant Vaughn. Lt. Demeter Case Opening Memo ("FBI COM") (May 11, 2012), at 1.[2] In the May 2012 case opening memorandum, Lt. Demeter "respectfully request[ed] that SA A. Garth Weintraub be assigned as a co-case agent" on the case. *Id.* at 5; *see also id.* at 1 (identifying Lt. Demeter as "C/A" and Agent Weintraub as "Co C/A"). Lt. Demeter's narrative in the May 2012 memorandum notes that in 2012 (prior to May), Lt. Demeter and Agent Weintraub were together on surveillance and observed Defendant Vaughn. *See id.* at 4. The Government asserts that this surveillance by Lt. Demeter and Agent Weintraub in March 2012 was "on a separate case." Feb. 11 Gov't Ltr., at 3 n.1.

Thus, there are three relevant time periods for purposes of the present motion:

- **May 11, 2012 and just prior**: Lt. Demeter was on the FBI JTTF, engaged in at least some surveillance with Agent Weintraub that involved Defendant Vaughn (even assuming that Defendant Vaughn was not the target of the surveillance). Lt. Demeter opened the FBI investigation of Defendant Vaughn while on the JTTF and requested that Agent Weintraub be assigned as co-case agent with him;

- **May 11, 2012 to August 2012**: At some point in May 2012, after opening the FBI case against Defendant Vaughn and being assigned "C/A," Lt. Demeter leaves the FBI and rejoins the New Jersey State Police. During this time, Lt. Demeter finds an informant (the CW) against Defendant Vaughn, conducts (with the State Police) some initial drug buys with Defendant Vaughn using the CW, and then brings the CW to the FBI. This is the period during which Defendant Vaughn

---

[2] This memorandum was not produced to Defendant Vaughn until January 20, 2016, upon order of the Court.

3

> alleges that the entrapment occurred; and
>
> - **August 2012 to August 2013**: the FBI signs up the CW and begins using him in its investigation against Defendant Vaughn until Defendant Vaughn is arrested in August 2013.

During the last period (August 2012-August 2013), there are numerous video and audio recordings of alleged drug buys between Defendant Vaughn and the CW. The Government does not dispute that there are no recordings prior to this period, including the period of the alleged entrapment. In fact, because of this, in one of the Government's submissions to the Court pertaining to the CW identification issue, the Government acknowledges:

> In this matter, CW-1 will provide key testimony regarding Vaughn's direct participation in the crimes charged. Most significantly, CW-1 is the only witness who can provide direct evidence to counter claims Vaughn may make about alleged entrapment conversations between Vaughn and CW-1.

Gov't Letter to the Court (Nov. 30, 2015), at 4. Additionally, there are no records of communications between the CW and Lt. Demeter regarding the initial undercover drug buys as Lt. Demeter and the Government failed to preserve those messages. Later text messages preserved by Agent Wojcik show that the CW periodically refers to the various agents with which he has contact. Because those records do not exist for the period in question, there is no separate corroborating evidence before the Court regarding the officers with whom the CW was interacting during the period of the alleged entrapment. Thus, Defendant Vaughn's entrapment defense will rely presumably primarily, if not exclusively, on the testimony of the agents involved, the CW, and him (if he testifies).

## DISCUSSION

The Court is aware and has previously noted that, in analyzing Rule 615(b) and surveying case law from other circuits, the Third Circuit has held that "the government case agent responsible for a particular investigation should be permitted to remain in the courtroom, even though the agent will often testify later on behalf of the government." *United States v. Gonzalez*, 918 F.2d 1129, 1138 (3d Cir. 1990). Defendant Vaughn "agrees that this Court has authority to excuse [a] witness from the Sequestration Rule in a given case, and the defendant further agrees that Courts have recognized that it is proper for case agents to assist the prosecutor throughout the trial-and testify as witnesses." Vaughn MIL Opp'n at 3. Nevertheless, Defendant Vaughn argues that "the agents in this matter should not be benefitted by hearing the evidence surrounding another witness's testimony—*with respect to the entrapment here*, and then get up on the witness stand to basically corroborate what it is that the previous testifying witness has said on the issue. This literally robs the defendant of his ability to thoroughly cross examine these witnesses-*with respect to the entrapment issue*." *Id.* at 4 (emphasis added).

The Government on the other hand asserts that "Agent Weintraub was . . . not involved when the alleged entrapment took place." Feb. 11 Gov't Ltr. at 3. Instead, they argue that "[t]he factual record *at trial* will show that though the FBI opened an investigation into Vaughn and others in May 2012, the FBI did not become actively involved in the investigation until August 2012." *Id.* (emphasis added). The Government states that "[b]y the time the FBI and Agent Weintraub became actively involved in August 2012, the CW had already purchased narcotics from Vaughn and his co-conspirators on multiple occasions. Those purchases were done at the CW's own behest or at the behest of the New Jersey State Police—in either case without FBI involvement." *Id.* The Government further argues that Defendant Vaughn has

5

admitted that Agent Weintraub was not involved during the period of entrapment, and as such there is no basis for sequestration or an order regarding the order of his testimony. In support of this position, the Government quotes Defendant Vaughn from his December 16, 2015 motion *in limine* submission, emphasis supplied by the Government:

> **BEFORE the FBI 'learned' anything about Lamont Vaughn's alleged participation in a 'drug organization'** (by and through . . . the confidential informant had been exposed to Lt. Demeter of the New Jersey State Police and cultivated'. **Again, it was Lt. Demeter who brought the CW over to the FBI. He told this Court that before any member of the FBI was exposed to the CW – he (Lt. Demeter) was exposed to him for a period of time, and had established a means of contacting him via 'text messaging' and 'talking'. The defendant Mr. Vaughn contends that it is here – at this particular point, where the entrapment begins.**
> . . .
> **Mr. Vaughn contends that it was Trooper Lt. Demeter who first brought this so called investigation to the members of the FBI . . . Mr. Vaughn also contends that Lt. Demeter then brought the FBI his personal informant . . .**
> . . .
> **Simply put, the defendant was set in motion by the confidential witness in the matter – who had been sent to the defendant by Lt. Gregory Demeter. It was only AFTER** Trooper Lt. Demeter was "certain" that the confidential witness was able to move the defendant (after being induced) to reach out for prescription pills (in small amounts) and heroin (in small amounts), **that he brought this individual (the CW) to the FBI**.

*See* Feb. 11 Gov't Ltr. at 4 (citing Vaughn MIL Opp'n at 61, 65-66).

Defendant Vaughn's statements in December 2015 quoted above were based on representations of the Government and the testimony of Lt. Demeter (*see* ECF No. 257 (Vaughn Letter to Court (Feb. 12, 2016)) that "*prior to this case beginning*, that trooper [Lt. Demeter] was a member of that [JTTF] task force" (May 11, 2015 Hr'g Tr. at 75:5-21 (emphasis added)), that the "time period of the investigation" was "August 2012 through August 2013" (Sept. 1, 2015 Hr'g Tr. at 11:10-22), and that "in his [Demeter's] capacity as a state police officer . . . [w]hen he got this informant, he brought this informant to the joint terrorist and task force" (*id.*). Although

Defendant Vaughn had previously requested information about when the investigation began and who was involved, Defendant Vaughn was not aware until January 20, 2016 (after his motions *in limine* briefing) of the contents of Lt. Demeter's FBI case opening memorandum that indicated that Lt. Demeter opened the FBI's "full investigation" on Defendant Vaughn in May 2012 while he was at the FBI and before returning to the New Jersey State Police, that Lt. Demeter had engaged in surveillance for the FBI with Agent Weintraub prior to this date, and that Lt. Demeter requested that Agent Weintraub be assigned as FBI co-case agent on the Vaughn investigation in May 2012. In fact, in a submission to the Court *after* production of the FBI COM, Defendant Vaughn argues:

> In the paper that the Court had ORDERED the Government to turn over to the defense-prior to beginning the hearing yesterday, the very same paper that the Government turned over to the defense toward the end of the hearing on yesterday (thus, not permitting the defense to comment on the details contained in the report-at that time), it is absolutely clear that the "Case Agent" in this matter-was Trooper Lt. Gregory Demeter, and the "Co-Case Agent" was Garth Weintraub. (See Bottom of Page 1 "C/A Demeter" and "Co C/A Weintraub"). The date of this report is clear. The date that the "FULL INVESTIGATION" was initiated, is also clear. In fact, on page number five of this report, "this writer (Trooper Lt. Demeter) respectfully requests that SA A. Garth Weintraub be assigned as 'Co-Case Agent for the above captioned case.'" Thus, it is clear that Special Agent Weintraub was most certainly a part of this investigation from the very beginning, which is contrary to what the Government has represented to the Court. . . .
> . . .
> Mr. Vaughn contends that at this point, this Court should keep before its face-the fact that the Government is willing to make up a story and/or capable of making up stories and taking various positions that fit into their overall trial (or case) narrative here, and this is not only something that is wrong and unfair to the defendant, but more, this is something that can prejudice the defendant at his trial on the issues.
>     Mr. Vaughn will like for the Court to be mindful of the fact that Agent Weintraub was seated in the Courtroom at the time that this representation was made by the Government-and he did not move to correct the representations made by the Government, on the record.
> . . .
>     The Government has been representing to the Court in this matter-even up until the point of yesterday's hearing, that Agent Wojick was the Case Agent in

7

> this matter. In fact, Lt. Demeter mentioned in his testimony before this Court that Agent Wojick was the Case Agent in this matter. However, as noted above, in the report that was handed over to the defendant on yesterday, it is Lt. Gregory Demeter who authors the report, and it is Lt. Gregory Demeter who is listed as the "Case Agent" in this matter-with Agent Weintraub being the Co-Case Agent. In other words, the posture of the Government-up until this point, has been to paint Lt. Demeter to have been in a supportive role to the FBI in this matter (and indeed, Lt. Demeter has done this paint job of himself as well-in his testimony before Your Honor), when the fact of the matter is-Lt. Demeter has been the one to influence this investigation from the very beginning, as this particular FBI report makes absolutely clear.

ECF No. 237 (Defendant Vaughn Letter to the Court, Jan. 21, 2016), at 2-3; *see also* ECF No. 257 (Letter from Vaughn to the Court, dated Feb. 12, 2016), at 5 ("[I]n Mr. Vaughn's estimation, Agent Weintraub was without question a part of this investigation from the very beginning; yes, even before it became a 'Full Investigation'. In fact, this is precisely why Lt. Demeter specifically requested to the FBI higher up's-that Agent Weintraub be designated as 'co-case agent' in this matter upon opening the 'Full Investigation,' in May of 2012.").

The Court reads Defendant Vaughn's pre-2016 arguments in the context of the information available to him at the time they were made. Although the Government asserts that Agent Weintraub was not involved in the alleged entrapment, and that "at trial" the record will show that he "did not become actively involved in the investigation" until after the period of the alleged entrapment, that is a fact that Defendant Vaughn contests. What is undisputed is that, prior to the period of the alleged entrapment, Agent Weintraub participated in surveillance with Lt. Demeter of Defendant Vaughn (whether he was the target of the surveillance at that time or not), the FBI "full investigation" on Defendant Vaughn was opened prior to the period of the alleged entrapment, and Lt. Demeter recommended that Agent Weintraub be assigned as co-case agent prior to the period of the alleged entrapment. It is also undisputed that witness testimony will be key (using the Government's words) to issues related to Defendant Vaughn's entrapment

defense. That testimony will involve Government agents as well as the CW and possibly Defendant Vaughn. Additionally, Defendant Vaughn is not objecting wholesale to the sequestration exemption. Instead he argues that sequestration is appropriate "with respect to the entrapment issue."

The Government argues that the above facts do not support sequestration or an order requiring Agent Weintraub to testify first. They argue that "[h]ere, like the defendant in *Gonzales*, Vaughn has argued that the plain language of Rule 615(b) should be overridden based on generalized concerns that Agent Weintraub might tailor his testimony to that of other witnesses. Vaughn's position is exactly what the Third Circuit rejected in *Gonzales* and it should be rejected here." Feb. 11 Gov't Ltr. at 6. The Government further argues that defendant Vaughn's entrapment defense does not alter this conclusion. *Id.* at 8 (citing *United States v. Butera*, 677 F.2d 1376, 1378 (11th Cir. 1982)).

The Court disagrees. In *Gonzales* the defendant simply argued that "agents could coordinate their testimony," and the Third Circuit held that such an argument "does not pose a likelihood of prejudice since they had ample time before trial to do that, were they so inclined." *Gonzales*, 918 F.2d at 1138 n.8. In *Butera*, the Eleventh Circuit noted that "the district court specifically made an observation on the record, however, that Morris had not taken full advantage of the court's [sequestration exemption] ruling and had not remained in the courtroom during the testimony of other witnesses." 677 F.2d at 1381. Here, there is more than a "generalized concern" expressed by Defendant Vaughn. Defendant Vaughn has noted that a Government witness (Lt. Demeter) previously provided testimony regarding the investigation that was inconsistent with later produced documents. He has noted that Agent Weintraub, the agent in question for purposes of this motion, sat silent in Court while the Government stated

9

that he had not been involved in the case from the beginning without offering to clarify his earlier surveillance role or, more importantly, that he was listed as co-case agent in the May 2012 memorandum that opened the FBI's investigation. Defendant Vaughn has highlighted the importance of his ability to cross-examine these witnesses in his defense and particularly pertaining to the entrapment issue, a point which the Government essentially concedes by acknowledging that witness testimony on the issue of entrapment will be important. Additionally, unlike some other cases, the testimony at issue will involve both Government Agents as well as a civilian cooperating witness. In the context of this case and Mr. Vaughn's allegations of entrapment, this is more than a naked assertion that the agents can coordinate their testimony. Clearly, although Defendant Vaughn has proffered some limited aspects of his entrapment defense, it is likely that these witnesses will be cross-examined and/or questioned on his undisclosed version of events.[3]

For these reasons, the Court finds that, on the atypical facts of this case, a very limited sequestration of Agent Weintraub is appropriate. Agent Weintraub will only be sequestered during the testimony of Agent Wojcik, Lt. Demeter, and the CW (if any of them testify), and only during the portion of the testimony related to the alleged entrapment. Based on the representations of the Government that the FBI was not involved during the alleged entrapment period and the assertion that Agent Wojcik will testify first, with Agent Weintraub second or after a witness not affected by this decision, the practical effect should be that there is no or very limited sequestration of Agent Weintraub. For example, if Agent Wojcik was not involved prior

---

[3] The Court also notes that the Government has asserted that Agent Wojcik was the main case agent and will testify "soup to nuts." Jan. 20 Hr'g Tr. at 191:1-17. It is for the convenience of Agent Wojcik's schedule that the Government wishes to designate Agent Weintraub. *See id.* at 187:24-188:3.

to the FBI signing up the CW, Agent Wojcik's direct testimony would not be expected to cover this period, and as a result there would be no requirement of sequestration during her direct testimony. Likewise, sequestration would be required on cross of Agent Wojcik only during questioning by Defendant Vaughn related to the alleged entrapment, if any.

Saying that, the Court acknowledges that it is unsettled whether any sequestration—even limited—can be ordered with respect to a designated agent regardless of the facts. The Third Circuit in *Gonzales* did not at that time "decide the issues of whether a case agent may ever be excluded from trial or what level of prejudice is necessary to carry such a motion for sequestration since it is not before us today." 918 F.2d at 1138 n.8; *see also United States v. Drummond*, 69 F. App'x 580, 581 (3d. Cir. 2003) ("We have held that a case agent for the Government falls within this exemption, and *ordinarily* cannot be sequestered pursuant to Rule 615.") (emphasis added) (citing *Gonzales*). Other courts have held sequestration of a Government agent for limited purposes to be appropriate. *See, e.g.*, *United States v. Phibbs*, 999 F.2d 1053 (6th Cir. 1993) (holding that courts are not without power to ensure that the two agents "would not parrot each other's testimony," and finding the district court had addressed such a concern by "direct[ing] that, when one of [the agents] was on the stand, the other was to be outside the courtroom," and indicating that "[s]uch a measure could be taken, not only on the basis of the court's inherent powers of trial oversight, but also in reliance upon Rule 615 itself"); *United States v. Farnham*, 791 F.2d 331, 334-35 (4th Cir. 1986) (overturning a conviction on one count because the defendant's "conviction on Count Three turned exclusively on the relative credibility of the defendant on the one hand and Agents Phillips and Martin on the other. Sequestration of Martin during Phillips' examination would have minimized the opportunity for collusion or tailoring of testimony, permitting Farnham to test each agent's credibility,

11

independent of the other's testimony.") (internal citations omitted). *But see United States v. Machor*, 879 F.2d 945, 953 (1st Cir. 1989) (noting a Circuit split on the issue)[4]; *In re U.S.*, 584 F.2d 666, 667 (5th Cir. 1978) ("[T]he clear mandate of the rule [615(b)], reinforced by expressed legislative history controls our decision here [sequestration not appropriate]. We note though, that the District Court is not left powerless. Our decision today in no way affects that Court's control over the order of the presentation of the evidence under Rule 611(a)."). However, as noted above by the court in *In re U.S.*, regardless of the Court's inherent powers or authority under Rule 615 to sequester a witness (including a Government agent), the Court retains discretion under Rule 611 to direct that an agent testify first.

Rule 611 ("Mode and Order of Examining Witnesses and Presenting Evidence") provides:

> Control by the Court; Purposes. The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:
> (1) make those procedures effective for determining the truth; . . . .

Fed. R. Evid. 611(a). The Third Circuit has held that "Rule 611(a) does not exempt case agents" and noted that, pursuant to Rule 611, "other courts of appeals have held that case agents, ineligible for sequestration under Rule 615, might nonetheless be forced to testify first at trial, to avoid giving the prosecution unfair advantage." *United States v. Drummond*, 69 F. App'x 580, 582 (3d. Cir. 2003); *see also United States v. Machor*, 879 F.2d 945, 953-54 (1st Cir. 1989) ("[U]nder Fed. R. Evid. 611 . . . the court has ample discretion to control the order of interrogating witnesses. However, this discretion should be used sparingly and good reason

---

[4] The *Machor* Court noted (similar to the *Gonzales* Court): "We are not holding however, that the rule withdraws all discretion from the trial court to exclude a case agent in an exceptional case. Because this is not such a special circumstance, we need not decide the point." 879 F.2d at 953 n.2.

should exist before the court intervenes in what is essentially a matter of trial strategy.") (cited in *Drummond*); *see also In re U.S.*, 584 F.2d at 667 (quoted above). Although the Court in *Drummond* found that such measures were not warranted based on the specific facts of that case because there was only a "negligible possibility of prejudice" that did not outweigh the Government's interest in ordering its witnesses as it chose, the Court acknowledged that there may be instances were such measures are appropriate in accordance with the "trial's truth-seeking function." *Drummond*, 69 F. App'x at 583 (noting that "this might be a more difficult issue if Marzec's testimony were not clearly subsidiary to Mailey's, or if there were non-Government witnesses involved for whom pre-trial coordination of testimony would be more difficult").

For the reasons discussed above with respect to Rule 615, the Court finds that, in this unusual case, the scale tips in favor of requiring Agent Weintraub to testify first if the Government persists in insisting that Agent Weintraub be present for all testimony. The testimony of the certain witnesses previously identified by the Court are alleged by Defendant Vaughn to be key to his defense; one of the witnesses is a civilian cooperator; there is a question as to who was involved during the period of the alleged entrapment and the level of that involvement; a Government witness has previously made at best inconsistent and at worst misleading statements under oath about the timing and his involvement in the investigation; and the full narrative of the expected cross as to the entrapment issue is unknown. Therefore, the facts of this case pertain to more than a mere allegation that there may be pre-coordination of testimony. *See Drummond*, 69 F. App'x at 583 ("Here, the two witnesses were both law enforcement officers, who had worked closely together throughout the investigation, *and Drummond gave no other reason for his motion than to prevent deliberate conformity of*

*testimony*. If the witnesses were so inclined, and we have confidence that they were not, the two easily could have discussed their testimony before trial.") (emphasis added).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Government's motion. If the Government chooses not to consent to the very limited sequestration outlined herein, Agent Weintraub shall be required to testify prior to Agent Wojcik, Lt. Demeter, and the CW (if any of them are called to testify).[5] An appropriate Order accompanies this Opinion.

DATED: June 14, 2016

                                              /s/ Jose L. Linares
                                              JOSE L. LINARES
                                              U.S.D.J.

---

[5] Although the Government withdrew its request to exempt Agent Wojcik, the Court notes that the same reasons that support a limited sequestration of Agent Weintraub or ordering preference related to Agent Weintraub do not support the same measures with respect to Agent Wojcik. There is no information before the Court that Agent Wojcik was involved in the case prior to or during the period of the alleged entrapment.